UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>WOUND SYNC, LLC,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND TRADEMARK DILUTION**<br><br>**JURY DEMANDED** |

Plaintiff Blue Cross and Blue Shield Association ("BCBSA"), by and through its counsel, brings this Complaint against Defendant Wound Sync, LLC ("Wound Sync"), for trademark infringement, unfair competition, and trademark dilution under federal and Texas state law. BCBSA alleges as follows:

**PARTIES**

1. Plaintiff Blue Cross and Blue Shield Association is a nonprofit corporation organized under the laws of the State of Illinois, with its principal place of business at 225 North Michigan Avenue, Chicago, Illinois 60601.

2. On information and belief, Defendant Wound Sync, LLC, is a limited liability company organized under the laws of Delaware with its principal place of business at 116 West Blanco Road, Suite 201, Boerne, Texas 78006.

**JURISDICTION AND VENUE**

3. This action arises under the Lanham Act, 15 U.S.C. § 1051, et seq., and the laws of the State of Texas. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C.

§ 1121 and 28 U.S.C. §§ 1331, 1338(a)–(b).  Further, this Court has supplemental jurisdiction over BCBSA's state–law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to BCBSA's federal claims.

4. This Court has personal jurisdiction over Wound Sync because, on information and belief, Wound Sync maintains its principal place of business in Texas.  Further, on information and belief, Wound Sync conducts business in Texas, such as advertising and selling its services to Texas residents.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Wound Sync resides in this District, as it is subject to personal jurisdiction in this District.  Additionally, venue is proper because a substantial part of the events giving rise to these claims occurred in this District.  Wound Sync conducts business throughout Texas, such as by advertising and selling its services to consumers in this District and has committed the infringement as alleged below in this District, such that the acts or omissions complained of took place—in whole or in part—within Kendall County, Texas.

## FACTUAL ALLEGATIONS

**I.    BCBSA Maintains Famous Trademarks and Source Identifiers.**

6. BCBSA is a national association of 34 independent, community–based and locally operated BLUE CROSS® and BLUE SHIELD® companies ("Member Plans"), including Blue Cross and Blue Shield of Texas ("BCBSTX") in this District.  With its roots starting in 1929, BCBSA represents the nation's oldest and largest family of health benefits companies.

7. For nearly a century, BCBSA (including through its predecessors–in–interest, its Member Plans, and licensees) has provided tens of millions of American families with top–quality affordable health care plans.  Indeed, BCBSA's Member Plans cover 1 in 3 Americans, collectively providing health care coverage for 115 million members across the United States and Puerto Rico.

BCBSA's Member Plans also provide health care plans to more than 70% of Fortune 500 companies and more than 81% of Fortune 100 companies. Nationwide, BCBSA's Member Plans contract with more than 1.7 million health care providers—more than any other insurer. In fact, on information and belief, Wound Sync's cofounder, Dr. Han P. Pham–Hulen, is an in–network provider for BCBSTX, the Blue Cross and Blue Shield licensee in Texas.[1]

8. BCBSA's BLUE CROSS and BLUE SHIELD brands are among the most famous and renowned in healthcare and healthcare–related industries, both domestically and globally. BCBSA owns the BLUE CROSS word and design marks, the BLUE SHIELD word and design marks, as well as other marks consisting of the image of a blue cross, a blue shield, or both. BCBSA (including through its predecessors–in–interest, its Member Plans, and licensees) has used these trademarks and service marks since at least the 1930s.

9. BCBSA also licenses the use of these various marks to its Member Plans and other licensees for the provision of a wide variety of goods and services, including but not limited to, insurance, healthcare delivery services, healthcare data and analytics, financial services, wellness services, health education, and other related goods and services.

10. In the United States alone, BCBSA owns over 270 valid and subsisting federal trademark and service mark registrations. Many of its U.S. registrations have become incontestable under Section 15 of the Lanham Act. Additionally, BCBSA owns similar trademark and service mark registrations in more than 180 countries throughout the world. All of these (along with numerous trade names and common law marks) form a family of BLUE trade names, trademarks, and service marks ("Blue Marks").

---

[1] *See, e.g.*, https://www.medifind.com/doctors/han-p-pham-hulen/12544811 (last visited June 15, 2023) (stating the cofounder accepts Blue Cross Blue Shield insurance)

11. A subset of the Blue Marks is a wide range of marks consisting entirely or substantially of either the words BLUE CROSS, an image of a blue cross, or both ("Blue Cross Marks"). Examples of BCBSA's federal trademark registrations for its Blue Marks, including the Blue Cross Marks, are listed in Exhibit A.

12. Historically and through the present, these Blue Cross Marks span a variety of differently configured crosses. BCBSA (including through its predecessors–in–interest, its Member Plans, and licensees) has used and does use the Blue Cross Marks in a wide range of blue colors, from light to dark and through a variety of hues and tones. Examples of the Blue Cross Marks include:



13. At common law, BCBSA has used the Blue Cross Marks in connection with a broad range of healthcare, insurance, medical and related services, including without limitation: health insurance and plan services; health care management and consulting services; health care and medical services; health care delivery through medical clinics, physicians, wellness screening services, and wellness programs, including in wound care; assessing healthcare service provider performance; and providing services for locating and connecting with healthcare providers and physicians.

14. For instance, one BCBSA Member Plan partnered with another company to deliver enhanced wound and ostomy care to homebound patients, known as the Wound Care Connect

4

Program.[2]  Another BCBSA Member Plan established health centers to provide the community access to personalized support from nurses and specialists, fitness classes and wellness programs, assistance in navigating their health plans, among other services.[3]

15. As another example, one BCBSA Member Plan offers Blue Cross® Coordinated Care, which is a personalized health care management program that connects patients with a care team composed of nurses, doctors, social workers, pharmacists and behavior health specialists that coordinate with local providers and community resources.[4]  The same BCBSA Member Plan offers Blue Cross Online Visits$^{SM}$, which allows patients to have virtual visits with a healthcare provider.[5]

16. For decades, BCBSA (including through its Member Plans and licensees) has extensively used, advertised, and promoted the Blue Marks, including the Blue Cross Marks, throughout the United States.  For instance, in past years, annual net revenue under the Blue Marks, including the Blue Cross Marks, has exceeded $300 billion domestically.  BCBSA (including through its Member Plans and licensees) has created substantial goodwill in the marketplace by spending millions of dollars in advertising and promoting its marks, services, products, and image bearing the Blue Marks, including the Blue Cross Marks, such as online through BCBSA's website and social media accounts.

17. For example, BCBSA Member Plan, Blue Cross and Blue Shield of Texas ("BCBSTX") has partnered with the National Fitness Campaign and other entities to deliver outdoor fitness venues, Fitness Courts®, to residents throughout Texas to build healthy

---

[2] *See* https://providernews.anthem.com/ohio/articles/wound-care-connect-program-for-medicare-advantage-and-group-retiree-members (last accessed June 23, 2023).
[3] *See* https://www.floridablue.com/center (last accessed June 23, 2023).
[4] *See* https://www.bcbsm.com/providers/help/coordinated-care/ (last accessed June 23, 2023).
[5] *See* https://www.bcbsm.com/find-care/online-visits/ (last accessed June 23, 2023).

communities.[6] So far, BCBSTX has helped deliver Fitness Courts® to 28 Texas counties for the public to enjoy, which are accessible to tens of thousands of individuals. Since BCBSTX is a partner, the Blue Marks, including the Blue Cross Marks, are often included on the Fitness Courts®. Similarly, BCBSTX has served the Texas community by sponsoring The Caring Foundation of Texas and its The Care Van program, which provides access to preventive health services to children throughout the state. Since the program began in 1997, The Care Van program has served over 1.3 million Texas children, including through its fleet of custom vans, which bear some of BCBSA's Blue Marks, including the Blue Cross Marks.

18. As another example, a BCBSA Member Plan is a founding partner of NASCAR's first ever Chicago Street Race Weekend.[7] Therefore, BCBSA's branding will be used throughout the course, such as in a dedicated founding partner section, fan entrances, concert stages, wayfinding, and at the historic start–finish line. It is anticipated that approximately 100,000 viewers will attend the NASCAR event in person, and millions of viewers will watch at home.

19. BCBSA has established rights in the Blue Marks, including the Blue Cross Marks, through its long term, continuous, and exclusive use of the marks in commerce in the United States.

20. As a result of BCBSA's efforts, the general public recognizes the Blue Marks, including the Blue Cross Marks, separately and collectively as identifying BCBSA, its Member Plans, and licensees—and the quality services they render. The Blue Marks are an asset of incalculable value to the BCBSA. In fact, third parties have touted the fame and strength of BCBSA's Blue Marks, including the Blue Cross Marks, in multiple unsolicited media references.

---

[6] *See* https://www.nationalfitnesscampaign.com/texas (last accessed June 23, 2023)
[7] *See, e.g.*, https://www.nascar.com/news-media/2023/03/28/nascar-tabs-blue-cross-and-blue-shield-of-illinois-as-founding-partner-of-chicago-street-race-weekend/ (last accessed June 23, 2023).

For instance, a commentator warned companies in the healthcare industry to avoid using a blue cross as a trademark or logo since there was a "large barrier in this arena: the famous marks owned and registered" by BCBSA.[8]

21.     Further, U.S. federal district courts and other legal panels such as the World Intellectual Property Organization have expressly recognized the fame of the Blue Marks, including the Blue Cross Marks.  For example, the court in *Blue Cross & Blue Shield Ass'n v. Blue Cross Mut. Clinic, Inc.* held that the "BLUE CROSS word mark and BLUE CROSS design marks are famous and strong marks, whether used in association with one another or independently" for health care services and prepaid financing and administration of medical, hospital, and similar health care services.  612 F. Supp. 41, 44 (S.D. Fla. Feb. 28, 1985).  As another example, a WIPO Panel found that BCBSA's Blue Marks had acquired a high degree of distinctiveness and fame, given the "longstanding use of the BLUE CROSS and BLUE SHIELD marks, both separately and in conjunction, [BCBSA's] high volume of business transacted under or in connection with the marks, as well as the worldwide use, registration and recognition of the marks." *Blue Cross and Blue Shield Ass'n v. Garrett Ltd./John Nunley*, WIPO Case No. D2003-0028 (March 12, 2003).

**II.     Wound Sync Willfully Infringes BCBSA Trademarks through its Unauthorized Use.**

22.     In or around September 2019, Wound Sync filed a trademark application (App. Ser. No. 88/628,369) for its original logo, a blue and green cross above the term "WoundSync" ("Abandoned Mark"), as depicted below:

---

[8] *See*, *e.g.*, https://www.bradley.com/insights/publications/2013/04/one-cross--two-cross--red-cross--blue-cross-trad__ (last accessed June 23, 2023).



23. In its application, Wound Sync represented that it was already using the Abandoned Mark in commerce.

24. In or around November 2019, BCBSA reached out to Wound Sync regarding its application because BCBSA was concerned the Abandoned Mark was likely to cause consumer confusion and dilution given its similarities with the Blue Cross marks. The parties discussed BCBSA's concerns on January 10, 2020.

25. In June 2020, Wound Sync abandoned its trademark application for the Abandoned Mark and based on BCBSA's investigation, it appeared that Wound Sync ceased using the Abandoned Mark. Therefore, BCBSA discontinued its enforcement efforts against Wound Sync regarding the Abandoned Mark.

26. About a year later, Wound Sync filed a new trademark application (Ser. App. No. 97/186,345) for an updated mark, a blue cross above the term "WoundSync," as depicted below:



27. To be clear, despite being on notice about BCBSA's concerns regarding the

Abandoned Mark, Wound Sync adopted the updated mark which is even more like BCBSA's famous Blue Cross Marks.

28. In its application for the updated mark, Wound Sync represents that it began using the updated mark in commerce at least since July 8, 2020, almost a year after BCBSA notified Wound Sync about its concerns with the Abandoned Mark.

29. Wound Sync also has used and currently uses a variation of the updated mark that includes a standalone blue cross without the term "Wound Sync" (together with the updated mark, the "Infringing Marks") as depicted below.



30. As an example, below are screenshots of Wound Sync's website depicting uses of the standalone Infringing Mark is shown below, with additional examples attached as Exhibit B.[9]

---

[9] *See* https://web.archive.org/web/20211027220004/https://woundsyncinc.com/faqs/ (last accessed June 23, 2023). Since Wound Sync's website, woundsyncinc.com, is currently inactive, BCBSA collected screen captures of an archived version of Wound Sync's website.



31.     Wound Sync uses the Infringing Marks in connection with a host of healthcare and related services, including without limitation, healthcare development and management services and on information and belief, direct patient care services, such as wound care and hyperbaric medicine services. This use is substantially similar to the services BCBSA uses the Blue Cross Marks as described *supra* in paragraph 13-15 (setting forth use of Blue Cross Marks in connection with *inter alia* health care management and consulting services; health care and medical services; health care delivery through medical clinics, physicians, wellness screening services, and wellness programs, including in wound care; and assessing healthcare service provider performance).

32.     On its LinkedIn profile, Wound Sync represents that it specializes in developing solutions for hospitals "where our provider group . . . staffs the hospital's wound care center." Indeed, Wound Sync represents that "We are, at our core, an independent provider group that is

solely focused on healing patients who entrust us with their care." It then notes that Wound Sync has potential opportunities throughout the United States, so providers "who may have a passion for wound care" should "reach out to us."  A screen capture showing Wound Sync's LinkedIn profile is attached as Exhibit C.

33. Wound Sync has used and uses the Infringing Marks to advertise its healthcare related services, such as on its website, social media sites (*e.g.*, LinkedIn) and on information and belief, on signage, and stationery.  Also, Wound Sync has used and uses the Infringing Marks to promote its services to hospitals and other health care providers.

34. In November 2022, the USPTO published Wound Sync's new trademark application, and BCBSA confirmed that Wound Sync resumed its infringing activities by using the Infringing Marks in commerce.  Since the Infringing Marks were even more like the Blue Cross Marks than the Abandoned Mark, as shown below, BCBSA recognized that the Blue Cross Marks would be diluted by the Infringing Marks, and consumers were likely to be confused regarding the source of Wound Sync's services or deceived into believing BCBSA and Wound Sync were affiliated.

| **Exemplary BCBSA Blue Cross Mark** | **Wound Sync's Infringing Mark** |
|---|---|
| | |

35. In an attempt to amicably resolve the dispute, BCBSA contacted Wound Sync in January 2023. BCBSA expressed its concern that the Infringing Marks were likely to confuse consumers, and asked if Wound Sync would amend the Infringing Marks and corresponding trademark application to mitigate any risk of confusion. Wound Sync refused.

36. Since at least July 8, 2020, Wound Sync has willfully infringed the Blue Cross Marks, intending to cause consumer confusion and exploit the goodwill of the mark. On information and belief, Wound Sync was aware of BCBSA's trademark rights in the Blue Cross Marks when it began using the Infringing Marks in commerce.

37. On information and belief, as an in–network provider for BCBSTX with over 21 years of experience in healthcare,[10] Wound Sync's cofounder, Dr. Pham–Hulen, was undoubtedly aware of BCBSA's trademark rights before Wound Sync adopted the Infringing Marks. In fact, to become an in–network provider for BCBSTX, Dr. Pham–Hulen signed a Provider Agreement wherein Dr. Pham–Hulen agreed to avoid using BCBSA's "name, symbols, trademarks or service marks in advertising, promotional or information materials" without prior written consent.

38. If permitted to continue, Wound Sync's use of the Infringing Marks will continue to damage and irreparably injure BCBSA, the Blue Marks, including the Blue Cross Marks, and BCBSA reputation and goodwill associated with the Blue Cross Marks. Wound Sync should not be permitted to reap the benefits of BCBSA's extensive efforts to build a valuable and world–renown brand in its Blue Marks, including Blue Cross Marks.

39. Furthermore, Wound Sync's use of the Infringing Marks is detrimental to the public's interest in being free from confusion as to the source, sponsorship, or affiliation between

---

[10] *See* https://www.medifind.com/doctors/han-p-pham-hulen/12544811 (last accessed June 23, 2023).

BCBSA and Wound Sync. In particular, Wound Sync's use of the Infringing Marks is likely to cause confusion, mistake, or deception as to the source or origin of both BCBSA's and Wound Sync's services, and is likely to falsely suggest a sponsorship, connection, license, or association between the two entities. The risk of confusion is exacerbated considering that Wound Sync's cofounder, Dr. Pham–Hulen, contracts with BCBSTX, and accepts Blue Cross and Blue Shield insurance.

40. Unless restrained from perpetuating its damaging acts, Wound Sync will continue to damage and irreparably harm BCBSA by damaging its valuable reputation and goodwill with the consuming public for which BCBSA has no adequate remedy at law.

## COUNT I
### Infringement of Federally Registered Trademarks
### (15 U.S.C. § 1114)

41. BCBSA repeats and realleges paragraph 1 through 40 of this Complaint as if fully set forth herein.

42. BCBSA owns the Blue Cross Marks that are registered ("Registered Blue Cross Marks"), including U.S. Reg. Nos. 0,554,488, 0,554,817, 1,699,627, 3,172,396, 3,288,740, 4,111,938, and 5,352,918. BCBSA began using some of the Registered Blue Cross Marks in commerce at least as early as 1934 and has continuously and exclusively used the marks in the United States since then.

43. The Registered Blue Cross Marks are valid and enforceable, and some of the Registered Blue Cross Marks are incontestable.

44. Wound Sync's use of the Infringing Marks is likely to cause confusion among relevant consumers and thus constitutes infringement of a registered trademark in violation of 15 U.S.C. § 1114.

45. Since at least July 8, 2020, Wound Sync has willfully infringed upon the Registered Blue Cross Marks, intending to cause consumer confusion and exploit the goodwill of the marks.

46. As a direct and proximate result of Wound Sync's wrongful acts, BCBSA has suffered, is suffering, and will continue to suffer damages to its trademarks, business reputation, and goodwill.  BCBSA does not have an adequate remedy at law and will continue to suffer irreparable injury unless Wound Sync is enjoined from engaging in further acts of infringement.

## COUNT II
### Trademark Infringement, False Designation and Unfair Competition
### (15 U.S.C. § 1125(a))

47. BCBSA repeats and realleges paragraph 1 through 46 of this Complaint as if fully set forth herein.

48. BCBSA owns the Blue Cross Marks.  BCBSA began using some of the Blue Cross Marks in commerce at least as early as 1934 and has continuously and exclusively used the marks in the United States since then.

49. Through its unauthorized use of the marks in interstate commerce as described above, Wound Sync has (i) infringed the Blue Cross Marks, including the Registered Blue Cross Marks and related common law marks; (ii) falsely designated the origin of its products and services; and (iii) competed unfairly with BCBSA, in violation of 15 U.S.C. § 1125(a).

50. Wound Sync's use of the Blue Cross Marks is likely to cause confusion and mistake and to deceive the public as to the approval, sponsorship, license, source or origin of Wound Sync's products and services.

51. Since at least July 8, 2020, Wound Sync has willfully infringed the Blue Cross Marks, intending to cause consumer confusion and exploit the goodwill of the marks.

52. As a direct and proximate result of Wound Sync's wrongful acts, BCBSA has

suffered, is suffering, and will continue to suffer damages to its trademarks, business reputation, and goodwill. BCBSA does not have an adequate remedy at law and will continue to suffer irreparable injury unless Wound Sync is enjoined from engaging in further acts of infringement.

## COUNT III
## Texas Common Law Trademark Infringement

53. BCBSA repeats and realleges paragraph 1 through 52 of this Complaint as if fully set forth herein.

54. BCBSA owns the Blue Cross Marks, which are valid and enforceable.

55. Wound Sync's actions as alleged herein, including the use of the Infringing Marks for its services, constitute trademark infringement in violation of Texas common law.

56. Wound Sync's infringing use of the Infringing Marks is likely to cause consumer confusion regarding whether its products and services originate from BCBSA or are associated or affiliated with BCBSA, and whether both organizations are associated or affiliated.

57. As a direct and proximate result of Wound Sync's wrongful acts, BCBSA has suffered, continues to suffer, and is likely to suffer damages to its business reputation and goodwill. BCBSA has no adequate remedy at law and, unless restrained, Wound Sync will continue to infringe and cause irreparable damage to BCBSA.

## COUNT IV
## Texas Common Law Unfair Competition

58. BCBSA repeats and realleges paragraph 1 through 57 of this Complaint as if fully set forth herein.

59. Wound Sync has been and is engaging in acts of unfair competition in violation of Texas common law—including by using the Blue Cross Marks—that are likely to cause confusion, mistake, or deception regarding the approval, sponsorship, license, source or origin of the Wound

Sync's services.

60.     Wound Sync has damaged and will continue to damage BCBSA irreparably. BCBSA has suffered damage to its goodwill and reputation in the marketplace that money cannot compensate.

61.     Due to Wound Sync's actions, BCBSA has no adequate remedy at law and is entitled to an injunction restraining Wound Sync from engaging in further acts of unfair competition.

**COUNT V**
**Trademark Dilution**
**(15 U.S.C. § 1125(c))**

62.     BCBSA repeats and realleges paragraph 1 through 61 of this Complaint as if fully set forth herein.

63.     This claim is for the dilution of trademarks, pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

64.     BCBSA's Blue Cross Marks are distinctive and famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and were distinctive and famous prior to Wound Sync's use of the Infringing Marks in commerce including, but not limited to, Wound Sync's marketing, advertising, promotional, and social media efforts, and use in connection with its healthcare development and management, and direct patient care services.

65.     Wound Sync's conduct, as discussed herein, is likely to dilute and is diluting the distinctive quality of BCBSA's famous Blue Cross Marks.  Wound Sync's use of the Infringing Marks impairs the distinctiveness of those famous marks and lessens the capacity of those famous Blue Cross Marks to identify and distinguish the services marketed and sold by BCBSA, its Member Plans, and/or its licensees under those marks.

66. Upon information and belief, Wound Sync willfully and deliberately diluted the Blue Cross Marks. Further, Wound Sync has profited and been unjustly enriched due to services it would not have sold but for its use of the Blue Cross Marks.

67. Wound Sync's willful and deliberate acts described herein have caused irreparable injury and damage to BCBSA, its goodwill, and its reputation. Unless enjoined, Wound Sync will cause further irreparable injury for which BCBSA has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, BCBSA demands a trial by jury, and respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A. A permanent injunction barring Wound Sync, its officers, agents, employees, and all persons acting on its behalf from (i) using, for any purpose——such as importing, distributing, advertising or selling—the Infringing Marks or any other mark or trade dress confusingly similar to the Blue Cross Marks; (ii) registering and/or attempting to register the Infringing Marks, including, denial of pending US Trademark Application Serial No. 97186345; and (iii) from otherwise competing unfairly with BCBSA.

B. Damages in an amount to be determined at trial;

C. Disgorgement of Wound Sync's profits;

D. Trebling of damages for willful infringement and unfair competition;

E. Corrective advertising;

F. Exemplary and punitive damages;

G. Pre-judgment interest at the legally allowable rate on all amounts owed;

H. Costs and expenses;

I.  Attorneys' fees and other fees under 15 U.S.C. § 1117(a) as an exceptional case; and

J.  Granting such other and further relief as this Court may deem just proper.

Dated:  June 26, 2023

/s/*Amanda N. Crouch*
Nathaniel St. Clair
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: 214.953.5948
Facsimile: 214.666.6848
nstclair@jw.com
Amanda N. Crouch
Texas State Bar No.  24077401
acrouch@jw.com
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205
Telephone: 210.978.7900
Facsimile: 210.242.4646

Keyonn L. Pope (*pro hac vice* forthcoming)
Monique B. Howery (*pro hac vice* forthcoming)
Edgar Matias (*pro hac vice* forthcoming)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, IL 60602
Telephone:  312.471.8700
Facsimile:  312.471.8701
kpope@rshc-law.com
mhowery@rshc-law.com
ematias@rshc-law.com

*Attorneys for Plaintiff*
*Blue Cross and Blue Shield Association*